# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIAM TROY COX, SR.**                          **CIVIL ACTION**

**VERSUS**                                          **NUMBER 09-237-DLD**

**REX MOSES AND**
**ENVIRONMENTAL ANALYTICS, INC.**

## RULING

This matter is before the court on a motion for summary judgment filed by defendants Rex Moses and Environmental Analytics, Inc. (EA) (rec. doc. 25).  The motion is opposed by plaintiff Troy Cox, Sr.  (rec. doc. 33).  The issue before the court is whether genuine issues of fact exist that preclude summary judgment on plaintiff's claim against EA for violations of La. R.S. 30:2027.

### Background

EA assists refineries in implementing their Leak Detection and Repair (LDAR) programs, as required by the Clean Air Act, by conducting the required periodic component-monitoring service (Statement of Uncontested Facts - rec. doc. 27).   One of EA's tasks is monitoring fugitive emissions of volatile organic compounds that may occur from the components (valves, pumps, compressors, pressure relief valves, etc.) at the refinery facility. Id.  EA effects the component monitoring through the use of hand-held monitoring devices by holding the hand-held device near the component for a sufficient length of time to obtain a valid reading.  Id. The data is transmitted from the monitoring device to the refinery's central database.  The refinery is responsible for reporting certain

data to the appropriate regulatory authority on a periodic basis. Id.  Louisiana law makes it a crime for any person to falsify the reporting requirements under the environmental regulations. See La. R.S. 30:2025F(2)(a).

It is undisputed that the hierarchy (from entry level) for EA field service employees is: (1) Field Technician, primarily responsible for the actual component monitoring; (2) Assistant Field Supervisor; (3) Field Supervisor, on-site supervisory responsibility and on-site interface with the client, composed of making sure that the Field Technicians complete their monitoring per regulations and maintaining a good working relationship with the client; (3a) Site Manager, a position found at the few client sites where there is more than one EA Field Supervisor; (4) Regional Manager; and (5) Field Coordinator, responsible for coordinating all of the service activities (rec. doc. 27).  EA has an employment policy that requires the Field Supervisor and the Regional Manager to agree to a written protocol ("No Field Supervisor" Window Protocol) of who will be responsible for certain job duties and obligations at a particular site if the Field Supervisor is going to be absent from the site for more than 24 hours (rec. doc. 28, Exhibit G).

Plaintiff was employed by EA from April 1998 through March 4, 2009, when he was terminated (rec. docs. 35). While employed by EA, plaintiff occupied several job positions. In addition to the specific job duties associated with each job position, plaintiff agreed to uphold EA's Integrity Calibration Pledge, which required plaintiff to perform his job duties with integrity, report concerns about the behavior of any EA employee in performing their duties, and report concerns about being pressured by an EA employee, client or workload to abandon the standard of integrity (rec. doc. 28-4, Exhibit D).

Plaintiff joined EA as a Field Technician at the Exxon facility and worked his way from Field Supervisor to Site Manager, with responsibility over both Field Supervisors at Exxon, to Regional Manager, with Site Manager responsibility at Exxon (rec. doc. 2). As a Regional Manager, plaintiff was entitled to additional benefits, such as a pay increase, a company vehicle, and a dividend based on EA profitability. Id. In 2008, plaintiff was reassigned from Regional Manager over Exxon to Regional Manager with a sales focus. The facts are unclear, but it appears that plaintiff held the sales position for about six months. In late 2008, plaintiff was asked to travel to California for two weeks to work with an EA client to ensure that data was being properly monitored and entered into the database. Id.

When plaintiff returned from California in early January of 2009, Cox noticed some EA employees at the Bayou Plaquemine Waterfront Park (Park) who were supposed to be at Dow conducting air monitoring.[1] After an investigation, plaintiff determined that while away from Dow and at the Park, the EA employees were manually imputing non-existent data into their hand-held monitoring devices, supposedly reflecting air monitoring at Dow. Id. On January 16, 2009, plaintiff reported the incidents to EA's President, Rex Moses. Id. Plaintiff departed for California the next day, and Rex Moses and other EA employees took various actions to resolve the issues with the EA employees who were found to be violating EA's policy and the law, either by terminating or disciplining the employees.[2]

---

[1]EA provides fugitive emissions monitoring services at Dow Chemical Company's Plaquemine facility (Dow). Id. Dow maintains a central database for the storage of the fugitive emissions data transmitted from the EA Field Technicians's hand-held monitoring devices (rec. doc. 27).

[2] In response to the incident at the park, EA terminated two of the Field Technicians, transferred another employee out of the Dow site, and demoted another employee from Field Supervisor, but allowed her to remain at the Dow site upon Dow's request (rec. docs. 27 and 36).

In late January 2009, after returning from California, plaintiff was assigned to Dow to help "clean-up" the site (rec. doc. 36). Plaintiff retained his title as Regional Manager and his company vehicle, the same salary, and dividend incentive, but was assigned the duties of a Field Supervisor and was relieved of his laptop, internet access, and access to Regional Manager emails.  On or about February 10, 2009, Cox discovered additional monitoring and reporting problems at Dow.  Specifically, plaintiff alleges that the air quality sampling at Dow had been forged and illegally reported for an extensive period of time because certain components were not in the database, but were in the field, or were in the database being monitored, but not actually in the field (rec. docs. 31 and 33).

Overwhelmed by the potential monitoring and reporting problems at Dow, on February 26, 2009, plaintiff left his job at Dow and took 98 hours of paid time off (PTO). On March 3, 2009, while on PTO, plaintiff telephoned Rex Moses and reported the problems that he had discovered at Dow. On March 4, 2009, plaintiff received a letter from Rex Moses and EA informing him that he had been terminated from EA due to his decision to take 98 hours of PTO without authorization and due to his decision to abandon the Dow site, leaving it without support and services, all without first addressing the problems with Moses (rec. doc. 33, Exhibit 9).

Plaintiff alleges that he was demoted (by being reassigned to a Field Supervisor position at Dow) for reporting the incident at the Park, and thereafter he was terminated for reporting the monitoring and reporting issues that he discovered at the Dow facility; therefore, plaintiff brought suit against EA and Rex Moses.  Plaintiff originally brought suit

-4-

against Rex Moses for defamation and against EA for violations of La. R.S. 23:967, which prohibits retaliation against an employee by an employer, and La. R.S. 30:2027, which prohibits retaliation against an employee by an employer for reporting environmental violations (rec. doc. 1).  Defendant moved for summary judgment on all of plaintiff's claims against defendants (rec. doc. 25).  In his opposition to the motion for summary judgment, plaintiff waived his claim for defamation against Rex Moses and his claim for retaliation under La. R.S. 23:967 against EA (rec. doc. 33).  Thus, the only remaining claim before the court is plaintiff's claim against EA for retaliation for environmental whistleblowing in violation of La. R.S. 30:2027, and the only issue before the court is whether there are issues of fact surrounding plaintiff's claim under La. R.S. 30:2027 precluding summary judgment.

### Arguments of the Parties

Defendants argue that plaintiff is unable to prove the elements of his claim against EA under La. R.S. 30:2027.  Specifically, defendant argues that the illegal activity of the rogue employees at the Park is not "an activity, policy, or practice of the employer" as required by La. R.S. 30:2027, that plaintiff's reporting the illegal activity by Dow employees or at Dow is not "protected activity" because it was part of his regular job description, that assigning plaintiff to Dow was not an "adverse action" because he kept his title of Regional Manager and most of the benefits that accompanied that position, that plaintiff cannot prove that he engaged in "protected activity" after assuming his position as Field Supervisor at Dow because he did not report the allegedly illegal monitoring issues prior to taking PTO and La. R.S. 30:2027 does not protect "opposition activity," and that plaintiff cannot prove that EA's stated non-discriminatory reason for terminating him (that he abandoned his job

site) was only pretext for terminating him because he reported the monitoring issues and in an effort to protect its relationship with Dow.

Plaintiff responds by arguing that the unlawful conduct of the EA employees at the Park is attributable to the employer; that the actions of EA and its employees are violations of environmental statutes and regulations; that plaintiff's report of environmental violations by the EA employees was "protected activity" because it was not part of his regular job description; that plaintiff suffered an "adverse action" when he was demoted to Field Supervisor at Dow because he was stripped of his Regional Manager and sales duties and many benefits of those positions, including access to email and internet and use of laptop computer; that plaintiff's refusal to participate in illegal activity after being assigned to Dow was "protected activity;" and that plaintiff suffered an "adverse action" when he was terminated for reporting the monitoring issues at Dow.

### Law Governing Summary Judgment and Substantive Claims

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law.  Federal Rule of Civil Procedure 56.  When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of his pleadings, but rather must come forward with "specific facts" showing that there is a genuine issue for trial.  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e).  The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  However, summary judgment must be

entered against the plaintiff herein, on a properly supported defense motion, if he fails to make an evidentiary showing in his opposition to the motion sufficient to establish the existence of an element essential to his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

Louisiana law prohibits retaliation by an employer against an employee for reporting environmental violations.  Specifically, La. R.S. 30:2027 provides in pertinent part as follows:

> A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:
>
> (1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.
>
> (2) Provides information to, or testifies before any public body conducting an investigation, hearing, or inquiry into any environmental violation by the employer, or another employer with whom there is a business relationship, of an environmental law, rule, or regulation.

In order for a plaintiff to establish a prima facie case of retaliation under the statute, he must show: (1) that he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity in which he engaged and the adverse action. See *Stone v. Entergy Services, Inc.,* 9 So.3d 193 (La. App. 4th Cir. 2009), citing *Guillot v. Walgreen Louisiana, Inc.*, 2008 WL 1744717, *3 (W.D.La. April 16, 2008); *Imbornone v. Treasure Chest Casino*, 2006 WL 1235979, *3 (E.D.La. May 3, 2006).  Louisiana courts look to federal Title VII jurisprudence to interpret Louisiana discrimination laws. *Stevenson v. Williamson*, 547 F.Supp.2d 544

(M.D. La. 2008).   Thus, the federal analysis applicable to a claim under Title VII also governs a claim under La. R.S. 30:2027.

With respect to the "causal connection" that must be established, plaintiff suggests that this is a "mixed-motive" case where EA's decision to demote and terminate plaintiff may been caused by both legitimate and illegitimate reasons. In a "mixed-motive" retaliation case, the plaintiff bears the initial burden of presenting evidence that a illegitimate reason was a motivating factor, even if not the sole factor.  *Smith v. Xerox Corp.,* 662 F.3d 320, 333 (5th Cir. 2010); see also *Price Waterhouse*, 490 U.S. 228, 246, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  Thereafter, defendant must prove that it would have made the same decision even without considering of the prohibited factor. Id.  The employer's burden is most appropriately deemed an affirmative defense.  Id.

### Discussion

The parties have stipulated that plaintiff observed conduct by EA employees at the Park the week of January 12, 2009, that could reasonably have been believed to be a violation of an environmental law, rule, or regulation (rec. doc. 35).

Defendant, however, has challenged several elements of plaintiff's claim under La. R.S. 30:2027.  Plaintiff and defendant have offered extensive evidence in support of their positions, but the court finds that too many genuine issues of material fact exist at this time to grant defendants' motion for summary judgment.  The court will briefly address each of the challenged elements.

With respect to whether the illegal activity of the EA employees at the Park is "an activity, policy, or practice of the employer" as required by La. R.S. 30:2027, the court finds that the cases cited by defendants regarding "rogue" employees are not dispositive and do

not support a judgment as a matter of law on this issue.[3] In the instant case, it is undisputed that the EA employees were imputing false/nonexistent data from the Park into the monitoring devices when they should have been monitoring fugitive emissions at the Dow facility. The EA employees at the Park were performing their job duties on EA time; however, they chose to perform those job duties improperly and in a manner that subjected EA to potential contractual and/or criminal liability as EA is liable for the actions and inactions of its employees. See La. R.S. 2320. EA's response to the incident in terminating/demoting/reassigning the offending employees indicates that EA knew that the actions of its employees could subject it to contractual or criminal liability (rec. doc. 36).

The next issue is whether plaintiff's reporting the illegal activity by the EA employees is a "protected activity" because it was part of his regular job description. The court in *Stone v. Entergy Services, Inc.,* 9 So.3d 193 (La. App. 4 Cir. 2009), held that "the Louisiana Environmental Whistleblower Statute does not afford protection to an employee who generates reports regarding environmental issues when reporting environmental issues, concerns, and potential violations is a part of one's normal job responsibilities, and part and parcel of what one is hired and/or required to do." The testimony and evidence adduced at trial, including Stone's testimony, established that it was part of Stone's job responsibilities as an environmental analyst to report potential environmental violations or concerns to his supervisor. Here, the facts in evidence indicate that at the time plaintiff reported the illegal conduct of the employees at the Bayou Waterfront Park, he was not

---

[3] See *Kyger v. Lowe's Home Centers, Inc.*, 2005 WL 78944 (E.D. La. 2005)(employee reported that co-employees were engaged in drug activity on work property); *Genella v. Renaissance Media d/b/a Charter Communications, LLC*, 2004 WL 2244244 (5th Cir. 2004) (employee reported that co-employee used company credit card to repair his personal vehicle).

assigned to Dow and was not responsible for supervising, much less policing, the activities of the employees at Dow.  Although plaintiff's specific job description at that time is unclear, it is clear that plaintiff recently had worked in sales for EA and on a special project in California.  Defendants contend that the Integrity Calibration Pledge signed by plaintiff expanded his specific job duties and made it part of his job duties to report concerns about any EA employee in performing their job duties with truth, honesty, and integrity.  Whether or not the obligations of the Integrity Calibration Pledge expanded plaintiff's job duties is an issue of fact that prevents summary judgment at this time.

Next, the court considers whether plaintiff suffered an "adverse action" when he was assigned to Dow after reporting the false monitoring at the Park.  The facts indicate that plaintiff retained the title of "Regional Manager" throughout several job transitions with EA (from Regional Manager at Exxon, to Regional Manager with sales duties, to Regional Manager with duties at the California facility), but it is questionable whether he retained the actual duties of a Regional Manager.  Defendants acknowledge that plaintiff was asked to assume the responsibilities of a Field Supervisor at Dow, which is a position two job levels below the Regional Manager position and one charged with duties different from those of a Regional Manager.  Further, it is undisputed that plaintiff lost some of the Regional Manager benefits when he was assigned to Dow, such as his laptop, access to the internet, and access to Regional Manager emails.  Thus, there is an genuine issue of fact as to whether plaintiff's reassignment to Dow to assume the job duties of a Field Supervisor, while retaining some of the benefits of a Regional Manager, would constitute a demotion and an "adverse action" under La. R.S. 30:2027.

The next challenged element is whether plaintiff engaged in "protected activity" *after* assuming his position as Field Supervisor at Dow.  The current version of La. R.S. 30:2027 protects an employee who "discloses, or threatens to disclose," as opposed to opposes or complains about certain activity that may be in violation of environmental law.[4]  Thus, plaintiff's position that he left the Dow site in silent opposition to the illegal activity that he discovered while working at Dow does not qualify as a "protected activity" under the statute without more.   On March 3, 2009, however, prior to being terminated on March 4, 2009, plaintiff clearly reported the illegal monitoring issues that he discovered at Dow.  Thus, there is evidence that plaintiff "disclosed" his concerns about the environmental violations at the Dow facility prior to being terminated.  The timing of this disclosure and the other facts surrounding plaintiff's decision to take PTO are relevant in determining defendants' reasons for terminating plaintiff. Additionally, the same issues of fact exist with respect to whether the Integrity Calibration Pledge expanded plaintiff's job duties as a Field Supervisor at Dow.

Finally, the court considers whether plaintiff can prove a "causal connection" between the "protected activity" and the alleged "adverse action."  Plaintiff offers evidence that he worked for EA for 11 years and received several promotions during that time. Plaintiff offers evidence to show that after he reported the improper/illegal monitoring by EA employees at the Park, he was reassigned as a Field Supervisor at Dow, a job position two

---

[4] Plaintiff relies on the pre-1991 amendment version of La. R.S. 30:2027 and case law interpreting that version of the statute.  It seems that prior to the 1991 amendment to the statute, La. R.S. 30:2027 protected an employee who opposes certain activity or "complains about possible environmental violations." The current version of La. R.S. 30:2027, however, does not include the word "complains" and indicates that it only protects an employee who "discloses, or threatens to disclose" a reasonable violation of an environmental law, rule, or regulation. See La. R.S. 30:2027A(1).

levels below a Regional Manager, and relieved of some of the job duties and benefits of a Regional Manager.  Additionally, plaintiff offers evidence that EA received a substantial financial benefit from its contract with Dow.  Plaintiff suggests that the illegal monitoring issues that he discovered while working at Dow threatened the relationship between EA and Dow and that EA chose to protect its relationship with Dow by terminating plaintiff shortly after the monitoring issues were disclosed.  Thus, plaintiff has offered sufficient evidence to show that a reasonable juror could find that an illegitimate reason was a "motivating factor" in defendants' decision to demote/terminate him.  Although defendants offer a legitimate reason for terminating plaintiff (plaintiff's decisions to take unauthorized PTO and to abandon his job duties as Field Supervisor), they do not establish that they would have terminated plaintiff without consideration of the "prohibited factor," i.e., plaintiff's reporting of environmental violations by EA employees at the Park and at Dow.  Defendants have not met their burden of proving their affirmative defense, and issues of fact remain as to whether defendants would have terminated plaintiff even without consideration of the prohibited factor. Thus, summary judgment is inappropriate at this time. Accordingly,

      **IT IS ORDERED** that defendants' motion for summary judgment (rec. doc. 25) be **GRANTED IN PART AND DENIED IN PART** as follows:

      Defendants' motion for summary judgment on plaintiff's claims for defamation against Rex Moses and on plaintiff's claim for violations of La. R.S. 23:967 against Environmental Analytics, Inc. is **GRANTED**, and Rex Moses is **DISMISSED** from this action;

Defendants' motion for summary judgment on plaintiff's claim for violations of La.

R.S. 30:2027 against Environmental Analytics, Inc. is **DENIED**.

Signed in Baton Rouge, Louisiana, on July 22, 2010.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**